Nicholson and another v. Thompson and another.

JAMES NICHOLSON and another *v.*WILLIAM T. THOMPSON and another, Wardens of the Port of New Orleans.

Under the act of the Legislative Council of the 31st of March, 1805, which created the offices of Master and Wardens of the Port of New Orleans, the tenure of those offices was at the will of the executive. That act conferred the power of appointment on the Governor alone, to be exercised as often as he should think necessary, and he alone was to be the judge of that necessity. The incumbent might be superseded, at any time, by a new appointment emanating from the Governor. The Legislature never having obeyed the injunction of section 6, article 8, of the Constitution, by determining the duration of the offices of Master and Wardens of the Port of New Orleans, the act of 1805 has continued in force, under section 4 of the schedule appended to the Constitution. The power conferred on the Governor by the act of 1805, of making new appointments to those offices whenever he shall deem it necessary, is not inconsistent with the provision of section 8, article 6, of the Constitution, authorizing the removal of public officers by an address of two-thirds of both houses of the Legislature. Both powers may be exercised concurrently. The Constitution has not repealed the act of 1805 ; it has only modified it so far as to require the concurrence of the Senate in making new appointments, and in superseding the incumbents. The question of the necessity of such appointments, is not one which the judiciary can assume to decide.

Under the Constitution of this State, the Governor and Senate have no authority to remove an incumbent, where the duration of the office has been determined by law whether for a term of years, or during good behavior.

The Governor has no right to remove an officer during the recess of the Senate He alone can, in no case, create a vacancy. Nor can he make any appointment to office, without the advice and consent of the Senate, except where a vacancy has occurred during the recess, and then only until the end of the next session of that body.

The rules which govern in the construction of a statute, are applicable to the Constitution, when supposed to conflict with an act of ordinary legislation.

The judicial department does not pretend to the power of supervising the proceedings or acts, of the other co-ordinate branches of the government : it decides only on the rights of parties in controversies which have assumed a judicial form. When the right of a citizen to enjoy the emoluments of a particular office, is contested by another pretending to have a better right under the Constitution and laws, it necessarily appertains to the judiciary to decide between them, according to the supreme law.

Neither the Governor of this State, nor the Governor and Senate, have any right of removal, as incidental to their power of appointment to office.

APPEAL from the District Court of the First District, *Buchanan*, J.

BULLARD, J.   The question which this case presents is, whe-

ther the office of Master and Wardens of the Port of New Orleans, be determinable at the will of the Governor and Senate, or whether the iucumbents can be removed only by an address of two-thirds of both Houses of the General Assembly, or by impeachment.

The office was created by the act of the Legislative Council of 1805. At that time, the Governor of Louisiana derived his authority from Congress, and that authority was little inferior to that of a Governor-General of a Spanish Province. He appointed to office without control, and without being obliged to take the advice of any one. The act creating the office, declares, that " It shall be lawful for the Governor of this Territory to appoint, as often *as shall be necessary*, one fit and proper person to be Master, and three other fit and proper persons, to be Wardens of the said Port of New Orleans," &c.

It cannot well be doubted, I think, that this act conferred on the Governor alone the power of appointment, as *often as he* should think necessary ; and that he alone, was the judge of that necessity, previously to the establishment of the State Constitution. The original tenure of the office was, therefore, in my opinion, at the will of the executive. The incumbent might be superseded at any time, by a new appointment emanating from the Governor of the Territory. It appears to me equally clear, that the Senate must now, under the Constitution, concur with the Governor in the act of appointment, and consequently the concurrent opinions of the Governor and Senate, are to decide upon the question of necessity. That is clearly not a judicial question. It is a question which the judiciary can no more assume the right to decide, than the Governor and Senate would have to review a judgment rendered by this tribunal.

The act of the Legislative Council creating the office in question was, in common with other acts of the Territorial Government, maintained in force by the Constitution, except so far as they were inconsistent therewith. See Schedule, sect. 4. And this leads us to the inquiry, how far the act of 1805 is repugnant to the Constitution, and how far the tenure of the office, as originally constituted, is modified by the Constitution. The clause which it is contended has taken away the powers from the executive to make

a new appointment at will, or, in other words, to remove the incumbents, is art. vi., sec. 8. It is in the following words : " The Legislature shall determine the time of duration of the several public offices, when such time shall not have been fixed by this Constitution; and all civil officers, except the Governor, and Judges of the Superior and Inferior Courts, shall be removable by an address of two-thirds of the members of both Houses, except those, the removal of whom, has been otherwise provided for by this Constitution."

It must be premised that, in relation to the office of Port Warden, the Legislature has never obeyed this injunction of the Constitution, by determining its duration, either for a term of years, or during good behavior. If it had done so, I have no doubt the Governor and Senate would have been without authority to remove the incumbent. Such a limitation of time would have been clearly inconsistent with, and repugnant to the act of 1805, which authorized a new appointment at the will of the executive, and would consequently have repealed it. An office limited by law, could not be determined by the mere will of the executive. The practice is certainly different under the Federal Constitution, but it is remarkable, that that instrument contains no provision on the subject of removal. The people of Louisiana have thought proper to separate the appointing from the removing power, except in reference to those offices which existed previously to the Constitution, and which have not since been limited by law. I therefore subscribe, in the fullest extent, to the doctrine that, under the Constitution of Louisiana, the Governor is without authority to remove an incumbent from office, whenever the duration of that office has been fixed and determined by law, whatever may be its duration, whether for a term of years, or during good behavior. But the question relative to the right of superseding the acting Port Wardens, by making a new appointment, by and with the advice and con- sent of the Senate, resolves itself, in my judgment, into this—is the act of 1805, declaring that office to be at the will of the executive, repugnant to that clause in the Constitution, which authorizes the removal of public officers by an address of two-thirds of both Houses.

The same rules, I apprehend, which govern in the construction

of statutes, are applicable to the Constitution, when supposed to conflict with an act of ordinary legislation. The only difference between the two, is, the superior paramount authority of the former. In comparing the act of 1805 with the Constitution, in order to test their consistency or repugnancy, I would adopt precisely the same rule, as if, by a new act of the Legislative Council, instead of a Constitutional provision, it had been provided, that thereafter all officers, except the Governor and the Judges, should be removable by an address of two-thirds of the Council. If in that case, the authority of the Governor, conferred by the original act, to make a new appointment whenever he should deem it necessary, might well co-exist with the right also to remove, vested in the Council, then there is no inconsistency—no repugnancy ; both powers may be exercised concurrently, and the original act is not tacitly repealed by the second, in consequence of any repugnance between them. The one does not necessarily exclude the other. The Governor may not think a new appointment necessary, and may desist from acting. The Legislature may think otherwise, and by a vote of two-thirds, even when the term of office has been limited by law, may require the removal, and render a new appointment necessary. I do not mean to say that the Governor and Senate may remove an officer, and make a new appointment, when the office has been limited by law. On the contrary, I am of opinion that they cannot. But I think, in relation 'to an office originally within the discretion of the executive, and the duration of which, has not since been expressly limited by law, the power to create a vacancy by removal, exists at the same time in the Governor and Senate, and in the General Assembly, under the 8th sect. of the 6th art. of the Constitution. That the exercise of that power by either is not incompatible, or, in other words, that the Constitution has not repealed the act of 1805, but has only modified it, by requiring the concurrence of the Senate when a new appointment is thought necessary.

I do not mean to be understood, as saying that the Governor has, in any case, the right to remove, in the recess of the Senate. On the contrary, I believe we all agree that he has no such power under the Constitution. That he alone, cannot, in any case, create a vacancy ; nor can he make any original appointment, without

the advice and consent of the Senate.  Fortunately, the people of Louisiana have guarded against arbitrary removals from office; and the chief executive magistrate cannot, alone, create any vacancy, nor appoint to office, without consulting the Senate, except when a vacancy may have occurred during the recess, and then only until the end of the next session.

But it is argued, that the Constitution having declared all civil officers, with certain exceptions, removable by an address of two-thirds of both Houses, it is *inconsistent* therewith, that they should be removable by any other authority.  But we must give some effect to the last section, *which excepts those whose removal has been otherwise provided for by this Constitution.*  I will not go so far as to say, that the act of 1805, which provides for a new appointment when thought necessary, having been kept in force by the Constitution so far as not repugnant to that instrument, another mode of removal has been provided by the Constitution for the Port Wardens, by maintaining in force that act, and making it, as it were, a part of the Constitution itself; yet I am satisfied, that although in relation to offices to be created under the Constitution, the mode of removal by address or impeachment may be the exclusive one, still the original tenure of the office of Port Warden, remains unchanged, except as to the co-operation of the Senate in making a new appointment and superseding the incumbents.  The word *inconsistent*, is not essentially different from *repugnant*, or *incompatible*.  There may be different modes not inconsistent with each other, but concurrent and cumulative, there being no words of exclusion; and public officers may well be removable, that is, be liable to be removed, in more ways than one, without any inconsistency that I can perceive.  At the same time I admit, that if the Legislature had determined the duration of the office in question, according to the injunction in the Constitution, it would have been placed beyond the reach of the appointing power.

The question of jurisdiction is, I think, easily disposed of. The judicial department does not pretend to have the power of supervision over the proceedings or acts of the other co-ordinate branches of the government.  It decides only upon the rights of parties, in controversies which have assumed a judicial form.

When the right of a citizen to enjoy the emoluments of a particular office, is contested by another, pretending to have a better right under the Constitution and laws, it appertains, necessarily, to the courts, to decide between them, according to the supreme law of the land. If in doing so, they give effect to the Constitution, in preference to an act of the Legislature, as being repugnant thereto, under that clause of our Constitution which we have sworn to support, and which teaches us, in express terms, that " all laws contrary to this Constitution shall be null and void," (art. 6, sec. 25,) or pronounce upon an act of the executive as unwarranted by the supreme law; we do no more than is required of us as an independent and co-ordinate department of the government.

Upon the whole, I conclude, that the office of Master and Wardens of the Port, is still at the will of the Governor and Senate, subject, however, to the power of removal by address; that consequently, the defendants have been constitutionally and legally appointed; and that the judgment ought to be reversed, and the injunction dissolved.

MORPHY, J. I concur in the views expressed by Judge Bullard, on the question before us, and do not know that I can make them stronger by any additional remarks; but I wish it to be distinctly understood that the majority of this court, in sustaining the appointments which gave rise to this controversy, do not do it on the ground assumed in the argument, that there is in the executive of this State a right of removal, which is incidental to his power of appointment. We hold, on the contrary, I believe unanimously, that the Governor alone, or the Governor and Senate, have no such power. It is clear, that the framers of our Constitution had in view the doctrine which had obtained under the Federal Government, that the power of removal belonged to the President alone, as an incident to his power of appointment, when they made it the duty of the Legislature to determine the duration of the several public officers, and prescribed a specific mode of removal for all civil officers ; 8th sec. of art. 6 of the Constitution. Had the Legislature complied with this injunction of the Constitution and fixed the duration of these offices, the present difficulty could not have arisen. Their failure to do so presents, in my opinion, the question, not whether the Governor had the right of removing the

plaintiffs, but whether he had that of making new appointments. It can hardly be questioned, that by the terms of the law of 1805, the Governor had the right of renewing his appointments when ever he deemed it necessary. If such was the original tenure of the office, has it been changed by the Constitution, or by any subsequent law? The only modification I can perceive, relates, not to the tenure of the office, but to the manner of making these appointments, which, like all others, must now be made by and with the advice and consent of the Senate. B. & C.'s Dig. p. 14. 9th section of article 11 of the Constitution. The concurrence of these two authorities being required to make new appointments to these offices, none, I apprehend, can be made during the recess of the Legislature, except when vacancies occur, as provided for by the 10th section of the 3d article of the Constitution. The Governor and the Senate then have, in my opinion, the right of making new appointments whenever they think it expedient, and will continue to have, and enjoy such right, until the tenure of the office is changed. When they exercise this right of appointment, the former incumbents, to be sure, go out of office, but this happens not by a removal of the Governor and Senate, but in consequence of the new appointments; their commission expires in the manner provided for by the law of 1805, which has been kept in force by the Constitution itself, and which provides, that " all laws now in force in this Territory, not inconsistent with this Constitution, shall continue and remain in full effect, until repealed by the Legislature." 4th section of the Schedule. I can see no inconsistency between that law and any article of the Constitution. The 8th section of the 6th article of that instrument, to which it is supposed to be repugnant, treats of the manner of removing from office, all civil officers; while the law of 1805 provides for the manner of appointing the Master and Port Wardens of the Port of New Orleans. The duration of these offices not having been determined, they are not necessarily to be held during the lifetime of the incumbents; but, according to the original tenure, they are to remain in office until superseded by new appointments, or until removed, like any other civil officer of the State, in one of the modes pointed out by the Constitution. It is true, that the singular anomaly is presented, that although the Governor and Senate

are without the power to remove the incumbents, it is lawful for them to do an act, which, in its consequences, brings about the same result. It is, nevertheless, an appointment, not a removal, because the removal is only a consequence of the act of appointment. The Governor alone, or the Governor and Senate, would have vainly attempted to remove the Master and Wardens of the Port of New Orleans, without making new appointments, because the power of removal does not reside in them. But their power of appointment, under the law of 1805, is not the less legal and constitutional, because it may have for its consequence the removal of the former incumbents. It may sometimes happen, that in performing an act perfectly constitutional in itself, an object may be accomplished indirectly, which could not be constitutionally done in a direct manner. Thus, although Judges cannot be removed except by impeachment, or on the address of three-fourths of each house of the General Assembly, the courts over which they preside, may be abolished by the Governor and a bare majority of the two houses. This act of legislation, which the defects of an existing system may have imperiously called for, would produce, as a necessary consequence, the removal of the incumbents ; and yet, it could not, I apprehend, on that account be pronounced unconstitutional. Of this, we have had an instance in our own State. In 1825, it was thought conducive to a proper administration of justice within the limits of New Orleans, to estab'ish a City Court, composed of one Presiding Judge and of four Associate Judges, instead of the Justices of the Peace, who were then in commission. A law was passed, repealing the acts creating those inferior tribunals, and thus the incumbents were displaced, in consequence of an act constitutional in itself. B. & C.'s Dig. p. 213. I therefore conclude, that the appointments by the Governor and Senate, have been legally and constitutionally made, and that they have put an end to the commissions of the former incumbents.

SIMON, J. I have attentively examined the opinion prepared by Judge Bullard. It meets fully my views upon the important question therein investigated, and is the exact expression of the ideas which have lead me to the same conclusion.

I think that the power given to the Governor by the territorial

law of 1805, to appoint the officers therein denominated, as often as shall be necessary is not contrary to, or inconsistent with, any of the provisions of the Constitution of the State ; that such power, which cannot now be exercised without the advice and consent of the Senate, is not an infringement of the Constitution ; and that the offices created by the territorial law, being not to be holden *during good behavior*, or *for life*, may be considered, under our Constitution, as being limited to the time which the Governor and the Senate may think necessary to fix, by re-appointing new officers to supersede the former incumbents.

I deem it, therefore, sufficient to state, that I concur fully with the opinion read by my colleague, Judge Bullard, which is the opinion of the majority of the members of this court.

MARTIN, J. I concur in the opinion just delivered by Judge Bullard. It is, therefore, ordered and decreed, that the judgment of the District Court be reversed, and the injunction dissolved, with costs in both courts.

GARLAND, J., *dissenting*. The plaintiffs allege that they have been legally appointed by the Governor and Senate of the State, Wardens of the port of New Orleans. That in pursuance of said appointments, they have taken the oath of office, and have, for several years past, discharged all the duties according to law. That their term of office is during good behavior ; and that they have a vested right in the offices they hold, and cannot be deprived thereof, except in the mode specified by the Constitution, and laws of the State. They allege, that their said office is one of trust and profit, and that the fees thereof amount to a large sum, which belongs to them, and that they are entitled to receive the same. They proceed to state, that the defendants have set up a claim to the office, and pretend, that they have been appointed to replace and supersede them, (the petitioners,) as Wardens of the port of New Orleans, and aver, that the defendants hold said office under color of a commission lately issued by the Governor of the State. It is further alleged, that the pretensions of the defendants to hold said office, are destitute of foundation in law, and that the issuing of commissions to the 'defendants, by the Governor, is an arbitrary assumption of power, and in violation of the Constitution of the State, of the laws, and of the vested rights

of the petitioners. That the usurpation of said office by the defendants, occasions great injury and damage to the petitioners. They further aver, that Thompson, one of the defendants, pretends to act in an official capacity, and has received fees from different persons, without authority, to which petitioners are entitled in law. They allege, that, without the interference of the court, the injury and damage will be irreparable.

The petitioners pray, that the defendants may be enjoined from attempting to exercise or perform any of the duties of said office, or from receiving any of the fees derived therefrom ; that judgment may be rendered declaring that the defendants are not Port Wardens of the city of New Orleans ; that their commissions may be declared null and void ; and that they be condemned to pay damages to the amount of five hundred dollars.

An injunction was issued provisionally. The defendant Laurent answered, that it was true he had been appointed by the Governor, with the advice of the Senate, a Port Warden, but alleged that he never applied for the office, and that he has not accepted the same. He denies having ever exercised the functions of the office, or having received any of the emoluments thereto appertaining ; avers that he has, on the contrary, notified the Governor that he could not accept the same. He, therefore, prays to be dismissed with his costs, as he has no claims or pretensions to the said office, or to any of the emoluments thereof.

The defendant Thompson answered, that the plaintiffs have no cause of action, and are not entitled to the remedy demanded. He further avers, that he has been regularly and constitutionally appointed one of the Port Wardens of the city of New Orleans, the effect of which appointment has been to supersede the commissions held by the petitioners, and that their functions have ceased. He denies generally the allegations in the petition, and asks to be dismissed with costs.

The facts are, that one of the plaintiffs was appointed a Port Warden in 1835, and the other in 1838, and commissions issued in conformity to the Constitution and laws of the State. Some short time past, the Governor of the State, without any complaint being made, so far as is known, as to the official conduct of the plaintiffs, nominated the defendants to the Senate as Port Ward-

ens, and tlie nominations were confirmed ; whereupon, commissions were issued in the usual form. The commissions are in the same words as those of the plaintiffs, with the exception of the names and dates. Thompson attempted to exercise the functions of the office, when the injunction was issued.

The law under which the appointments were made was passed on the 31st of March, 1805, (2 Martin's Digest, 396–7, § 7. Bullard & Curry's Digest, 466, No. 10,) by the Legislative Council of the Territory of Orleans, and approved by the Governor. It is as follows : "It shall be lawful for the Governor of this Territory to appoint, as often as shall be necessary, one fit and proper person to be master, and three other fit and proper persons to be wardens of the said port of New Orleans, who shall be called the Master and Wardens of the Port of New Orleans." &c. The French text is : " Le Gouverneur de ce territoire est autorisé à nommer, toutes les fois qu'il le jugera nécessaire, une personne propre et convenable pour être Maître, et trois autres personnes également convenables, pour être Gardiens dudit port de la Nouvelle Orléans, &c."

In the month of January, 1812, the Constitution of the State was adopted, and some months after, the Territory became a State. The 11th section of the 4th article of the Constitution provides, that "the existing laws in this Territory, when this Constitution goes into effect, shall continue to be in force until altered or abolished by the Legislature ;" and the 4th section of the schedule, declares, that " all laws now in force in this Territory, not inconsistent with this Constitution, shall continue and remain in full effect until repealed by the Legislature." The 8th section of the 6th article of the Constitution further provides : " That the Legislature shall determine the time of duration of the several public offices, when such time shall not have been fixed by this Constitution, and all civil officers, except the Governor and Judges of the superior and inferior courts, shall be removable by an address of two-thirds of the members of both houses, except those the removal of whom has been otherwise provided for by this Constitution."

Under the law and the provisions of the Constitution just stated, the District Judge decided that the provision in the statute,

which declared that the Governor can appoint a Port Warden whenever he shall judge it necessary, was inconsistent with the 8th section of the 6th article of the Constitution, and had no effect; and, therefore, that the Governor has no power to remove any officer except upon an address of two-thirds of the Legislature. The Judge perpetuated the injunction against Thompson, and he has appealed.

Various questions have been discussed in this court, which seem to me not necessary to a proper decision of the case, but in several of which, I concur with the majority of the court. I shall, therefore, merely state them, relying upon the arguments made in their support by my colleagues.

The first is, that the plaintiffs have no cause of action, and are not entitled to the remedy demanded. I think the action was well brought; and that an injunction is a remedy by which the injured party may have relief, or be protected in his rights. Although, technically speaking, a man may have no right of property in an office, yet he has as much right to the fees and compensation arising from it, when he is legally the officer, as he has to any other compensation he may earn by his physical or mental efforts. No one has a right to disturb or molest him in the exercise of his legal functions, or the receipt of his legal fees; and if it is done by any one without legal cause, the law will afford as ample protection and redress, as it will for the infringement of any other right. If any one disturb a public officer in the exercise of his legal authority, whereby he is damaged, he has a right of action against the wrong-doer; and he has also the same right, if any one, without legal authority, ejects him from office. 5 Mart. 271. 11 Mass. Rep. 160. 3 Tenn. Rep. 575. 1 Shower, 516. 9 Bingham, 692.

In relation to the question of jurisdiction which was argued in this court, it would, perhaps, be sufficient to say that it was not raised by the pleadings, and seems not to have been acted on in the inferior court: but I have no hesitation in expressing the opinion, that the court has ample jurisdiction. The counsel for the defence has argued this case upon the assumption, that the division of power mentioned in the 1st article of the Constitution, releases the Governor from all judicial restraint, and that his acts,

whether legal or illegal, cannot be inquired into, or the consequences of them remedied by any action whatever. The great purpose of that article was, to create three departments for the administration of the government, one to make the laws, another to expound them, and a third to see them faithfully executed ; and when it is said, that one of those departments shall not exercise any power properly belonging to the other, it must be understood in a sense that will enable each department to exercise its peculiar duties, and all, together, effect the great purposes for which the government was created. The officers of the judicial department have no right to make a law, or appoint a Judge ; but if the Legislature pass an act in violation of the Constitution, or the Governor violate it, or any law constitutionally enacted, the judicial tribunals, as the expounders of the Constitution and laws, have the power, when the rights of a citizen are affected by such unconstitutional action, to declare it, and apply a remedy. The Governor has no more authority to violate the rights of a public officer, than those of a private citizen ; the law guards the privileges of one, as sacredly as it does the rights of the other ; and it is the duty, and within the authority of this tribunal, to see all alike protected.

The discussion at the bar has taken a very wide range ; and the opinion expressed by the Congress of 1789, in relation to the power of appointment and removal of public officers, has been much relied on by the counsel for the defence. It may be true, that under the Constitution of the United States, the power of removal is incidental to the power of appointment ; but it is not, in my judgment, necessary to express any opinion as to the correctness of the doctrine settled in 1789 by Congress, as this case must be decided according to the provisions of our own Constitution, which is, in my opinion, conclusive on the subject. By prescribing a mode by which all public officers shall be removable, it excludes the idea of the power of removal being incidental to the power of appointment. Under the Constitution of the United States, it seems to be agreed by all parties, if the President, with the assent of the Senate, appoint any person to an office not judicial, already filled by another, it has the effect of at once removing the latter from office ; but I do not consider this to be the case in Louisiana. Our Constitution has provided the means by

which all public officers are to be removed from office.  The Go-
vernor and Judges of the courts by impeachment ; or the latter, by
an address of both branches of the Legislature.  Clerks of courts
are removable by a judgment of this tribunal ; and all other civil
officers by impeachment, or by an address of two-thirds of the
members of both branches of the Legislature.  Constitution, art.
4, § 5, 10 ; art. 5, § 3 ; art. 6, § 8.  It has been said, that all pub-
lic officers, whose term of office is not fixed by some law, hold
their offices at the will of the Governor, or of the Governor and
Senate.  I do not think so.  Such officers, in my opinion, hold
their offices at the will of the Legislature ; and neither the Go-
vernor and Senate conjointly, nor either of them, can displace
them, without the assent of two-thirds of both branches of the
Legislature.  This is the clear intent and meaning of the eighth
section of the sixth article of the Constitution.

When the Constitution fixes a rule of action, or directs the
mode in which a certain thing is to be done, I do not believe the
Legislature has the power to specify another mode, and sustain it
on the ground that the two are concurrent.  I cannot realize the
idea of concurrent constitutional and statutory provisions and re-
medies.  When the Constitution provides a means or rule, I con-
sider it as paramount to statutory law.  If the statutory provision
is the same as the constitutional one, it is useless ; if it be dif-
ferent, it must be inconsistent and derogatory, and, therefore, void.
And it makes no difference, whether the statute be anterior or
posterior to the Constitution.  It is sufficient that the provision in
the statute be different from that in the Constitution, to make it
null.  The 8th section of the 6th article of the Constitution, de-
clares, that *all civil officers* shall be removable by an address of
two-thirds of the members of both branches of the Legislature.
We will suppose that body to pass a law, which should declare,
that the tenure of office of all civil officers, except those speci-
fied, should be at the will of the Governor.  Would such a law
be constitutional ?  In my opinion it would not.  The Legislature
have no more right to dispense with a provision of the Constitu-
tion which imposes a duty, than it has to violate it ; and it is not
competent to that body to dispense with the exercise of a provi-
sion, so republican in its character as the one in question, and in-

serted by the convention, as I have no doubt, for the very purpose of protecting public officers from executive influence, and placing them beyond its displeasure. The words, " all civil officers," it seems to me include every one. No exception can be intended when words so comprehensive are used.

The 8th section of the 6th article of the constitution contains two separate and distinct clauses. The first makes it the duty of the Legislature, to determine or fix the duration of the several public offices, when it is not fixed by the constitution ; the second fixes the mode in which public officers are to be removed from office, a power conferred as much for protection as correction. It is not, to my mind, an argument entitled to any weight, to say, because the Legislature has not exercised its authority, and fixed the term of office of the Port Wardens, that, therefore, the other clause of the section is rendered nugatory, and controlled by an act of the Territorial Legislature. The argument will be new to the constitutional lawyers of this country ; and I believe they will see with some surprise, a decision from the highest tribunal in this State, which establishes the doctrine that an act of the Legislative Council of the Territory of Orleans, is concurrent with the Constitution of the State, and, in relation to a particular class of civil officers, places them without its pale, simply because that act provides that the Governor shall appoint them when neces-, sary.

The act of the Legislative Council of the Territory of Orleans declares, that the Governor " shall appoint, as often as it shall be necessary," fit and proper persons, Wardens of the Port, &c. The Constitution provides, that the Governor, by and with the advice and consent of the Senate, shall appoint all public officers, except those whose mode of appointment is otherwise provided for. Now, suppose the Governor of the State should, without the consent of the Senate, appoint a Port Warden, and when asked for his authority, should say, that the act of the Legislative Council was concurrent with the Constitution, and the appointment of Port Wardens an exception to it. What would be the reply to such an assumption ? Every one would at once say, that the Governor has no such power; and why ? Simply because the Constitution declares, that to make an appointment

ment complete, the assent of the Senate is necessary ; and that to remove an officer, the assent of two-thirds of the Legislature is necessary. The mode of appointment and removal is fixed by the Constitution in a manner different from that prescribed by the statute, which constitutes the inconsistency, and consequent nullity of the statute.

In the argument, much reliance has been placed on what is alleged to be a fact, that the acts of the Territorial Legislature were prepared and passed in the English and French languages, and that the law in one language was as obligatory as in the other. I do not consider the argument one of much weight, in coming to a correct conclusion ; but it happens to be a fact, that the acts of 1805, were not prepared and passed by the Legislative Council in both languages. The acts of that session were translated by Mr. Moreau Lislet into French, and published in the pamphlet edition of the laws with his certificate, as interpreter, that they were correctly translated. The case cited by the counsel for the defence, from 2 Martin's Reports, 177, for the purpose of proving that both texts were to be considered as law, declares, that " since the year 1806, inclusively, the acts of the Legislature are passed in both languages, and an original in each receives the signature of the Speaker of the House of Representatives, the President of the Council, and the approbation of the Governor. So that they are both the text, and the practice is to construe them together." The history of the country shows that this statement is true. So that whatever force the argument was expected to have, is entirely destroyed by the fact being in opposition to what was supposed. But give the defence the full benefit of the French text, and I do not see that the case is much strengthened by it. The Governor shall appoint when he shall judge it necessary. This means when it is indispensable, unavoidable, or essentially requisite. The mere volition of the Governor is not, therefore, the tenure of office, according to the true intent and meaning of the law. The public necessity is to be considered, and the Governor is not justified in acting, except upon its being apparent that it is for the public interest that he should.

It has also been much insisted on, that under the Territorial Government, the Governor could appoint and remove the Wardens

of the Port.  This I am not disposed to contest.  But it does not prove that he can do both now ; and if he cannot now appoint without the concurrence of the Senate, I repeat the question, how can he remove without the assent of two-thirds of the Legislature ?  Under the Territorial Government, the Governor appointed officers without the concurrence of any body of men whatever ; he removed them in the same manner ; and it is well understood, that the Governor of the Territory exercised his authority freely, and in a manner not at all satisfactory to all persons.  It is further known, that some of the prominent members of the convention were very jealous of the executive power ; and, it being supposed by many, that the Governor of the Territory would, in all probability be the first Governor of the State, I have but little doubt that the 8th section of the 6th article was inserted in the Constitution, as a check upon the power of the executive and as a security for the independence of officers under the State Government.

Believing, as I do, that the Governor had no power to supersede the plaintiffs in their offices, by appointing the defendants to fill the same situations, I am of opinion that the appointments are null and void.  I regard that part of the statute which relates to the appointment of Port Wardens, as inconsistent with the Constitution, and, therefore, of no effect.

I think the judgment ought to be affirmed.

*Roselius* and *Mazureau,* for the plaintiffs.

*Larue, Soulé,* and *Preston,* Attorney General, for the appellant.