## CITY OF PAWHUSKA *v.* PAWHUSKA OIL & GAS COMPANY ET AL.

### ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 281. Argued March 25, 1919.—Decided June 9, 1919.

As respects grants to municipalities of governmental authority—and such is the authority to regulate the rates charged to a city and its inhabitants by a gas company—the power of the States is not restrained by the contract clause of the Constitution. P. 397.

A city contended that, at the time when it granted a franchise to a gas company to use the streets and supply gas to the city and its inhabitants, the city alone had authority to regulate the charges and service thereunder within its municipal limits; that the legislature could not transfer that authority to a state commission consistently with the state constitution; and that in consequence a later act of the legislature, and an order of the commission thereunder changing the service and increasing the rates, impaired the obligation of the franchise contract between the city and the company. *Held,* that no question was presented under the contract clause affording this court jurisdiction to review a judgment against the city by the state Supreme Court. P. 396.

Writ of error to review 166 Pac. Rep. 1058, dismissed.

THE case is stated in the opinion.

*Mr. Preston A. Shinn* for plaintiff in error.

*Mr. T. J. Leahy,* with whom *Mr. C. S. Macdonald* and *Mr. Burdette Blue* were on the brief, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

A city in Oklahoma is complaining here of an order of the corporation commission of the State, made in 1917, regulating the rates and service of a gas company engaged in supplying natural gas to the city and its inhabitants. The company has a franchise, granted by the city in 1909, which entitles it to have its pipe lines in the streets and alleys of the city and provides that the gas shall be supplied at flat or meter rates, at the option of the consumer, and that the rates shall not be in excess of fixed standards.

When the franchise was granted there was a provision in the state constitution, Art. XVIII, § 7, reading: "No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted"; and there also was a statutory provision, Rev. Stats. 1903, § 398; Rev. Laws, 1910, § 593, declaring: "All such grants shall be subject at all times to reasonable regulations by ordinance as to the use of streets and prices to be paid for gas or light."

In 1913 the state legislature adopted an act providing that the corporation commission "shall have general super-

vision over all public utilities, with power to fix and establish rates and to prescribe rules, requirements and regulations, affecting their services." Laws 1913, c. 93, § 2. It was under this act, and after a full hearing on a petition presented by the gas company, that the order in question was made. The order abrogates all flat rates, increases the meter rates, requires that the gas be sold through meters to be supplied and installed at the company's expense, and recites that the evidence produced at the hearing disclosed that the franchise rates had become inadequate and unremunerative and that supplying gas at flat rates was productive of wasteful use. On an appeal by the city the Supreme Court of the State affirmed the order. 166 Pac. Rep. 1058.

The city contended in that court—and it so contends here—that at the time the franchise was granted it alone was authorized to regulate such charges and service within its municipal limits, that the legislature could not transfer that authority to the corporation commission consistently with the constitution of the State, and that in consequence the act under which the commission proceeded and the order made by it effected an impairment of the franchise contract between the city and the gas company in violation of the contract clause of the Constitution of the United States. Or, stating it in another way, the contention of the city was and is that the authority to regulate the rates and service, which concededly was reserved at the time the franchise was granted, was irrevocably delegated to the city by the constitution and laws of the State and therefore that the exertion of that authority by any other state agency, even though in conformity with a later enactment of the legislature, operated as an impairment of the franchise contract.

Dealing with this contention the state court, while fully conceding that the earlier statute delegated to the city the authority claimed by it, held that this delegation was

to endure only "until such time as the State saw fit to exercise its paramount authority," that under the state constitution the legislature could withdraw that authority from the city whenever in its judgment the public interest would be subserved thereby, and that it was effectively withdrawn from the city and confided to the corporation commission by the Act of 1913. The claim that this impaired the franchise contract was overruled.

It is not contended—nor could it well be—that any private right of the city was infringed, but only that a power to regulate in the public interest theretofore confided to it was taken away and lodged in another agency of the State—one created by the state constitution. Thus the whole controversy is as to which of two existing agencies or arms of the state government is authorized for the time being to exercise in the public interest a particular power, obviously governmental, subject to which the franchise confessedly was granted. In this no question under the contract clause of the Constitution of the United States is involved, but only a question of local law, the decision of which by the Supreme Court of the State is final.

"Muncipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with

the State within the meaning of the Federal Constitution."
*Hunter* v. *Pittsburgh*, 207 U. S. 161, 178.

In *Dartmouth College* v. *Woodward*, 4 Wheat. 518, it was
distinctly recognized that as respects grants of political
or governmental authority to cities, towns, counties and
the like the legislative power of the States is not restrained
by the contract clause of the Constitution, pp. 629–630,
659–664, 668, 694; and in *East Hartford* v. *Hartford Bridge
Co.*, 10 How. 511, where was involved the validity of a
state statute recalling a grant to a city, theretofore made
and long in use, of power to operate and maintain a ferry
over a river, it was said, p. 533, that the parties to the
grant did not stand "in the attitude towards each other of
making a contract by it, such as is contemplated in the
Constitution, and as could not be modified by subsequent
legislation. The legislature was acting here on the one
part, and public municipal and political corporations on
the other. They were acting, too, in relation to a public
object, being virtually a highway across the river, over
another highway up and down the river. From this
standing and relation of these parties, and from the
subject-matter of their action, we think that the doings
of the legislature as to this ferry must be considered
rather as public laws than as contracts. They related
to public interest. They changed as those interests de-
manded. The grantees, likewise, the towns being mere
organizations for public purposes, were liable to have
their public powers, rights, and duties modified or abol-
ished at any moment by the legislature. . . . Hence,
generally, the doings between them and the legislature
are in the nature of legislation rather than compact, and
subject to all the legislative conditions just named, and
therefore to be considered as not violated by subsequent
legislative changes." In *New Orleans* v. *New Orleans
Water Works Co.*, 142 U. S. 79, where a city, relying on
the contract clause, sought a review by this court of a

judgment of a state court sustaining a statute so modifying the franchise of a water works company as to require the city to pay for water used for municipal purposes, to which it theretofore was entitled without charge, the writ of error was dismissed on the ground that no question of impairment within the meaning of the contract clause was involved. Some of the earlier cases were reviewed and it was said, p. 91, "But further citations of authorities upon this point are unnecessary; they are full and conclusive to the point that the municipality, being a mere agent of the State, stands in its governmental or public character in no contract relation with its sovereign, at whose pleasure its charter may be amended, changed or revoked, without the impairment of any constitutional obligation, while with respect to its private or proprietary rights and interests it may be entitled to the constitutional protection. In this case the city has no more right to claim an immunity for its contract with the Water Works Company, than it would have had if such contract had been made directly with the State. The State, having authorized such contract, might revoke or modify it at its pleasure."

The principles announced ? applied in these cases have been reiterated and enforced so often that the matter is no longer debatable. *Covington* v. *Kentucky*, 173 U. S. 231, 241; *Worcester* v. *Worcester Street Ry. Co.*, 196 U. S. 539, 548; *Braxton County Court* v. *West Virginia*, 208 U. S. 192; *Englewood* v. *Denver & South Platte Ry. Co.*, 248 U. S. 294, 296.

*Writ of error dismissed.*