**40 So.2d 477**

**STATE ex rel. KEMP, Atty. Gen. of Louisiana v. CITY OF BATON ROUGE et al.**

**No. 39384.**

April 6, 1949.

Rehearing Denied April 25, 1949.

Bolivar E. Kemp, Jr., Atty Gen., Carroll Buck, 1st Asst. Atty. Gen., and John L. Madden, Asst. Atty. Gen., for plaintiff and appellant.

Henry G. McMahon, Parish Atty. and R. Gordon Kean, Jr., both of Baton Rouge, and Robt. L. Roland, Asst. Parish Attys. (Fred G. Benton, C.C. Bird, Jr., Borron, Owen, Borron & Delhaye, Breazeale, Sachse & Wilson, Brumfield, Hebert & Rush, Jess Johnson, Byron Kantrow, Fred S. LeBlanc, G. T. Owen, Jr., Sanders, Miller, Downing & Rubin, Taylor, Porter, Brooks & Fuller, Geo. M. Wallace and Wat-

son, Blanche, Fridge & Wilson, all of Baton Rouge, of counsel), for defendants.

MOISE, Justice.

The State of Louisiana, acting through its Attorney General, brings this action, seeking to test the constitutionality and legality of a Plan of Government for the Parish of East Baton Rouge and the City of Baton Rouge, and of the constitutionality of the amendment authorizing its adoption.

The petitioner alleges six different grounds of nullity of the constitutional amendment, pleaded on the main demand and in the alternative. Injunctive relief is sought to restrain the named defendants from performing the functions and duties of the respective offices because of the alleged nullity of Act No. 389 of 1946, creating provisions for the Plan of Government upon which these particular duties are based, and petitioner likewise prays for a recognition of the nullity of certain actions of the councils.

Defendants, in their answer, deny the allegations of unconstitutionality and the illegality of the Plan of Government, of the nullity of the constitutional amendment authorized by the plan, and of the illegality of any of the acts of the respective councils. (The plan contains a severance clause.)

The district court dismissed the plaintiff's suit and the plaintiff appeals.

The plaintiff contends that if the Constitution of the State of Louisiana has been

amended by this single amendment, the following separate things have been accomplished: The municipal limits of the City of Baton Rouge have been extended; the powers of local governmental units within the Parish of East Baton Rouge have been redistributed; three distinct areas within the Parish not otherwise recognized by the Constitution, that is, industrial, rural and urban areas, have been created and these areas have been made subject to varying tax limits; the governing authorities have been given the right to give to the municipality of the City of Baton Rouge revenue derived from taxes on property located outside that urban area; and the governing authorities have been given the power to tax property within the municipality or urban areas for the benefit of property outside that area.

Before entering into a consideration of the above constitutional questions, the court will observe that there are factors which should never be absent from the judicial mind: The first is that we are concerned in the power of the Legislature to adopt the constitutional amendment attacked and not its wisdom; the second, that "while the exercise of constitutional power by the Legislature is subject to restraint by the court, the only check upon our exercise of power is our own sense of self-restraint"; and the third, that every presumption of law and fact must be indulged in favor of the legality of the constitutional amendment, unless the contrary is made clearly manifest. Therefore, where one contests

a provision of the organic law of the State, the onus is on him to prove the nullity thereof to the exclusion of every reasonable hypothesis. The rationale of this rule is well expressed in the opinion of our own court in the case of Board of Liquidation v. Whitney-Central Trust & Savings Bank, 168 La. 560, 563, 122 So. 850, 851, as follows:

"* * * In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt. People v. Sours, 31 Colo. 369, 74 P. [167] 169, 102 Am.St. Rep. 34; People v. Prevost, 55 Colo. 199, 134 P. 129; Martien v. Porter, 68 Mont. 450, 219 P. 817."

We, therefore, ask ourselves, what is the rule of law relating to Article 21, Section 1 of the Constitution, the pertinent part of which provides:·

"* * * When more than one amendment shall be submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately. * * *"

The following is an excerpt from Vol. 11, American Jurisprudence, page 635, Constitutional Law, Section 31:

"* * * The rule has been laid down that a constitutional amendment which embraces several subjects, all of which are germane to the general subject of the amendment, will, under such a requirement, be upheld as valid and may be submitted to the people as a single proposition."

In an annotation to the case of Kerby v. Luhrs, 44 Ariz. 208, 36 P.2d 549, found in 94 A.L.R. 1502, at page 1511, the question here considered was passed upon by various states, as appears from the analysis of a number of cases, including State ex rel. Morris v. Mason, 43 La.Ann. 590, 9 So. 776. The cases of Graham v. Jones, 198 La. 507, 3 So.2d 761 and Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752, have likewise considered the same question. In all of these cases, by a plastic adaptation, the courts have accepted the rule laid down in Vol. 11, American Jurisprudence, page 635, hereinabove quoted.

We have before us a factual situation similar to that presented in the case of People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 178, 102 Am.St.Rep. 34. There, one of the objections raised to the constitutional amendment of the Colorado Constitution was that the amendment embodied a plurality of objects and purposes in violation of Article 19, Section 2 of the Constitution of that State, which is almost iden-

tical with ours. The Supreme Court of Colorado disposed of the question in the following language:

"We therefore conclude * * * that, if an amendment embraces more than one subject, said subjects need not be separately submitted, if they are germane to the general subject of the amendment, or if they are so connected with or dependent upon the general subject that it might not be desirable that one be adopted, and not the other; that this amendment does relate to a single definite object or purpose; and that the several matters objected to as not germane thereto do appear to be so connected with or dependent upon that object *or purpose that they ought not to have been* separately submitted."

█ It does, therefore, seem that the proposed amendment must be logically viewed as a Plan of Government which, while embracing several subjects, all are germane to the general purpose of the amendment, and that the constitutional requirements have been met in their submission by one amendment. All constitutional provisions use broad terms and are designed to have a comprehensive scope and operation, and when we examine the constitutional amendment itself, it is apparent that it has *one purpose, one design*—a Plan of Government.

It is true that this authority of the Constitution in the constitutional amendment was made subject to the organic laws and the laws of the State with respect to the power and function of local government, but the State contends that such authority could not be exercised without affecting other constitutional provisions and, as a matter of fact, was so exercised as to affect a number of other constitutional provisions. The Act directed the Commission to provide for and define urban and rural areas, and the State contended that the statute attempted to establish limitations of taxation applicable to urban, rural and industrial areas. The entirety of the plan was made subject to amendment by election of the people as provided therein.

The State cites Article 4, Section 12 of the Constitution, the pertinent part of which provides:

"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporation, public or private * * *."

And Article 10, Section 1 thereof, providing in part that:

"The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away; and all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only. * * *"

The provisions of Section 3(a) of Article 14 of the Constitution removed these limi-

tations and restrictions insofar as the Parish of East Baton Rouge is concerned in express language and authorizes the allocation of parish revenues and funds to the city. In this connection, Subdivision (2) of Section 3(a) of Article 14 of the Constitution of Louisiana provides:

"(2) Subject to the Constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, *such plan of government* may provide, among other things:

"(a) *For consolidation,* or reorganization, *of all or part of the local governmental units, agencies and subdivisions * * * and for all matters necessary or appropriate to the effectuation of such provisions, including, without limitation, the assumption by one local governmental unit, agency and subdivision of indebtedness of another or other and transfer of* official personnel records, *funds and other property and assets;* and

"(b) *For revenue for the support of the one or more local governmental units, agencies or subdivisions proposed by the plan, including, without limitation, allocation of parish revenues to other units, agencies or subdivisions.*" (Italics ours.)

■ Express and specific authority for the allocation of Parish revenues and funds

to the municipal government are contained in this constitutional amendment; and to the extent that Article 4, Section 12 and Article 10, Sections 1 and 5 are in conflict therewith, they must yield to the latest expressions of the will of the people. State ex rel. Corry v. Cooney, 70 Mont. 355, 366, 225 P. 1007, 1011 and cases cited therein; People ex rel. Elder v. Sours, 31 Colo. 369, 403, 74 P. 167, 175, 102 Am.St.Rep. 34; 11 Am.Juris. 663, 664, Const.Law, Sec. 54; 16 C.J.S., Constitutional Law, § 26, pages 66, 67.

■ While the language of Article 4, Sec. 12 of the Constitution provides, among other things, that "The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted * * *", this is not the loaning of the funds, credit and property or other things of value of the State or any political corporation thereof. The entire matter is for a public purpose— for the establishment of a plan of government.

■ It is the settled jurisprudence that counties and municipalities are creatures of the State, established for the purpose of providing effective government with functions, powers, duties and obligations delegated or imposed by the State and that there is nothing in the Fourteenth Amendment of the Federal Constitution or any other provision of the Constitution of the United States which would prohibit the State from making any change of such

functions, powers and obligations. In this field, *the State of Louisiana is supreme and may do as it wills, unrestrained by the Federal Constitution.*

In the case of Laramie County Com'rs v. Albany County, 92 U.S. 307, 23 L.Ed. 552, the United States Supreme Court held:

"Political subdivisions of the kind are always subject to the general laws of the State; * * *.

"Such corporations are the mere creatures of the legislative will; and, inasmuch as all their powers are derived from that source, it follows that those powers may be enlarged, modified or diminished at any time, without their consent, or even without notice. They are but subdivisions of the State, deriving even their existence from the Legislature. * * *"

In holding that it is powerless to set aside the legislative will, as a result of legislative changes in the powers and obligations of counties and municipalities, injustices might be done to some of the taxpayers, the Court goes on to say:

"Cases doubtless arise where injustice is done by annexing part of one municipal corporation to another, or by the division of such a corporation and the creation of a new one, or by the consolidation of two or more such corporations into one of larger size. Examples illustrative of these suggestions may easily be imagined. (1) Consolidation will work injustice where one of the corporations is largely in debt and the

other owes nothing, as the residents in the nonindebted municipality must necessarily submit to increased burdens in consequence of the indebtedness of their associates. (2) Like consequences follow where the change consists in annexing a part of one municipal corporation to another, in case the corpoartion to which those set off are annexed is greatly more in debt than the corporation from which they were set off.

"Hardships may also be suffered by the corporation from which a portion of its inhabitants, with their estates, may be set off, in case the corporation is largely in debt, as the taxes of those who remain must necessarily be increased in proportion as the polls and estates within the municipality are diminished. Even greater injustice may arise in cases where the legislature finds it necessary to circumscribe the jurisdiction of a county or town by dividing their territory, and creating new counties or towns out of the territory withdrawn from their former boundaries."

The settled doctrines of the courts to be acted upon whenever applicable, are that the State, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All of this may be done conditionally or unconditionally with or without the consent of the inhabitants or even

over their protest. The State in all respects is supreme and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the citizens and property holders may by such changes suffer inconvenience and their property may be lessened in value by the burden of increased taxes, or for any other reason, they have no right by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it. Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151; City of Pawhuska v. Pawhuska Oil & Gas Co., 250 U.S. 394, 398, 39 S.Ct. 526, 528, 63 L.Ed. 1054, 1057; City of Trenton v. New Jersey, 262 U.S. 182, 186–187, 43 S.Ct. 534, 536, 67 L.Ed. 937, 941, 29 A.L.R. 1471; Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 509, 62 S.Ct. 1129, 1133, 86 L.Ed. 1629, 1635; Soliah v. Heskin, 222 U.S. 522, 524, 32 S.Ct. 103, 56 L.Ed. 294; Risty v. Chicago R. I. & P. Ry. Co., 270 U.S. 378, 390, 46 S.Ct. 236, 241, 70 L.Ed. 641, 650. However, it appears that in the instant Plan of Government no such injustice was wrought.

The City of Baton Rouge and the Parish of East Baton Rouge might have been co-terminous and city taxes constitutionally levied upon rural as well as urban property, even though the inhabitants of the rural property would receive no benefit whatsoever from the municipal government.

In City of New Orleans v. Cazelar, 27 La.Ann. 156, it was held that where a city has extended its boundaries to include rural districts, those owning rural estates must pay city taxes. Therefore, the fishermen and trappers owning a little plot of marsh land at Chef Menteur must pay municipal taxes thereon, even though they receive no police or fire protection or any of the other benefits of the municipal government.

Plaintiff's third contention concerns Section 1.08(b) of the Plan of Government, which section provides that "It shall henceforth be unlawful in the industrial areas to construct or alter any building for use in whole or in part for residential purposes." It is contended that this provision is ultra vires as being unauthorized by any constitutional provision and that it restricts the use of land within these areas to industrial uses only, thus depriving the owners of their property without due process of law, in violation of Article 1, Section 2 of Louisiana's Constitution, and the Fourteenth Amendment of the Constitution of the United States, and further denies them the equal protection of law, in violation of the same amendment to the Federal Constitution.

The general rule of law is that only a person whose rights are injuriously

affected by those provisions of the law sought to be declared unconstitutional can be heard to challenge the constitutionality thereof. Ricks v. Department of State Civil Service, 200 La. 341, 369, 370, 8 So.2d 49, 61. The one exception to this rule is that a litigant has a right to challenge the constitutionality of provisions of a law which do not affect him, if other provisions thereof affecting the litigant must fall if the challenged provisions are held unconstitutional. State v. Louisiana Coca-Cola Bottling Co., 169 La. 167, 124 So. 769. This exception to the general rule relied upon by the plaintiff is evidenced by the petition which, after asserting the invalidity of this provision (Sec. 1.08(b), pleads the inseparability of all of the provisions of the Plan of Government. The right to challenge the validity of any of the provisions of the Plan of Government, if all of the provisions of the Plan of Government are inseparable, is admitted. However, there is no necessity to decide this question, if the provisions of the Plan of Government are held to be severable and separable, and even if this single provision of Section 1.08(b) is decreed invalid, the validity of the remainder of the provisions of the Plan of Government can be sustained. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49.

■ It is also a rule of law that the presence of a severability provision in a law is an admonition to the court of the intention that all valid provisions be retained in

full effect, even though some provisions thereof be held invalid, and hence creates a presumption of severability in fact. State v. Baggott, 212 La. 795, 33 So.2d 523.

Section 11.10 of the Plan of Government provides:

"If any provision of this plan of government or the application thereto to any person or circumstance is held invalid the remainder of this plan of government and the applicability of such provision to other persons or circumstances shall not be affected thereby."

■ Under this clause the single provision of Section 1.08(b) can be completely stricken out of the Plan of Government. The remainder of the provisions of the Plan of Government being declared severable, must stand. Under these circumstances, there is no necessity for this Court to pass upon the question presented.

■ In any event, it is clear that from constitutional authority, the State may directly or through its agencies limit land use, which is well recognized in the provisions of the Constitution relating to Zoning.

The fourth contention of plaintiff is that the provisions of Section 3.01(b) of the Plan of Government are ultra vires and invalid as having no constitutional or statutory authority.

Under the provisions of the Act No. 169 of 1898, as amended, known as the Charter of the City of Baton Rouge, as

well as under the general laws of the State, the City of Baton Rouge was vested with the authority to construct, repair and maintain streets, sidewalks and public ways within its corporate limits. Section 3.01(b) of the Plan of Government transferred these powers and functions to the Parish of East Baton Rouge. Authority for the transfer of these powers and functions from the City of Baton Rouge to the Parish of East Baton Rouge is expressly set out in Subdivision (2) of Section 3(a) of Article 14 of the Constitution of this State:

"(2) Subject to the Constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide, among other things:

"(a) For consolidation, or reorganization, of all or part of the local governmental units, agencies and subdivisions in the parish, for the elimination or transfer of power and functions of such units, agencies, and subdivisions, * * * and for all matters necessary or appropriate to the effectuation of such provisions, including, without limitation, the assumption by one local governmental unit, agency and subdivision of indebtedness of another or other and transfer of official personnel records, funds and other property and assets; * * *."

The power and function of constructing, repairing and maintaining streets, ways and sidewalks within the corporate limits of the City of Baton Rouge were granted to the City by Act 169 of 1898, as amended. Under the express provisions of the constitutional amendment, the Plan of Government transfers such powers and functions to the Parish Government.

The plaintiff's fifth contention challenges the validity, in whole or in part, of the four mill tax levied for general parochial purposes by the Parish Council, insofar as it affects taxable property within the present corporate limits of the City of Baton Rouge.

The question presented hinges on the construction of the following language of Section 3(a), Subdivision 3, of Article 14 of the State Constitution:

"The provisions of this Constitution relating to limitation of taxation by municipalities shall apply in the urban areas and those relating to the limitation of parish taxation shall apply in the industrial and rural areas."

The contention is that as the tax limitation by municipalities, under Article 14, Section 12, as amended, is seven mills, the quoted provision was intended to limit taxation within the urban area to seven mills, and therefore, to exempt urban property from parochial taxes.

Prior to the adoption of Article 14, Section 3(a), the limitation of tax-

ation by municipalities was seven mills, but this was never intended as preventing the parish from levying a tax upon property within municipalities. As a matter of fact, it could not be so understood, for the language is "by municipalities" and the four mill tax with which we are now concerned is not levied "by municipalities" but is levied by the parochial authorities. No language is used which exempts urban property from parochial taxes or which prevents such taxation of urban property. The quoted language must be read with all other language of Subdivision (3) of which it forms a part. All that the quoted provisions of Subdivision (3) were designed to do, and all that they do, is to clarify the matter of taxation of these three areas, and to distinguish the tax limitations on industrial areas and rural areas, on the one hand, from the tax limitation on urban property, on the other. The quoted provision no more prevents the parish from levying a four mill tax on property within the City of Baton Rouge than it prevents the State from similarly levying a 5.75 mill tax on property within the City of Baton Rouge.

■ The argument advanced by plaintiff on this point asserts an exemption from parochial taxation in whole or in part of urban property in East Baton Rouge Parish. It is well recognized that an exemption from taxation is strictly construed and must be clearly and unequivocally and affirmatively established. Pearce v. Couvillon, 164 La. 155, 113 So. 801. Not only does plaintiff's argument on this point fail to meet the necessary test but all of the language of Article 14, Section 3(a) indicates a clear intention on the part of the people of Louisiana not to exempt urban property in East Baton Rouge Parish from parochial taxes.

■ An alternative argument of plaintiff on this point is that the four mill parish tax levied on taxable property within the City of Baton Rouge is unconstitutional to the extent of one-half thereof, as being violative of Article 14, Section 8 of the Constitution of Louisiana. This provision reads:

"No parish, parish of Orleans excepted, shall levy for parochial purposes, on property located wholly within incorporated cities and towns of the State, having a population in excess of one thousand (1000) inhabitants, according to the last census, which provide and maintain systems of street paving, any general parochial tax in excess of one-half the levy for general parochial purposes; provided, that this section shall not apply in a parish which had a general unbonded indebtedness on January 1st, 1921, until said debt has been paid or funded into bonds."

The City of Baton Rouge no longer provides and maintains a system of street paving and, therefore, the property within its territorial limits is subject to the full parochial levy. Section 3.01 of the Plan of Government provides:

"The parish council of East Baton Rouge Parish shall, in addition to the powers and duties conferred or imposed by other provisions of this plan of government, have:

"(b) Exclusive authority, saving the authority of the State of Louisiana, throughout the parish, including the City of Baton Rouge, with regard to the construction, opening, widening, extending, closing, narrowing, improving, grading, paving, repaving, adorning with trees, shrubs and vines, curbing, guttering, cleaning, repairing, and maintaining, of streets, highways, boulevards, parkways, bridges, alleys and other public ways, and the grading, improving, constructing and reconstructing of sidewalks, including the authority to assess the whole or part of the cost of any street, alley or sidewalk improvement on the owners of the abutting property. To that end there are hereby transferred to the parish and to the parish council as the governing body thereof, except as specifically provided in this plan of government, all the powers and duties hitherto conferred or imposed on the City of Baton Rouge by its charter or by the general laws of the state relating to the above enumerated matters, * * *."

Section 1.07 of the Plan of Government, in part, provides:

" * * * There are hereby transferred, as of the first day of January, 1949, to East Baton Rouge Parish the use of all lands, building and equipment, belonging to the City of Baton Rouge, used in the construction, maintenance, repair and cleaning of the streets, boulevards, parkways, bridges, alleys and other public ways. * * *"

Under Section 5.03 all costs and expenses of operation of the Division of Street Maintenance in the consolidated Department of Public Works are to be defrayed solely and exclusively by appropriations from the Parish Council. In 1949 the budget of the City of Baton Rouge, as shown by documentary evidence in the record, did not appropriate anything for street maintenance or repair. Such an appropriation would be illegal under the Plan of Government. Consequently, the City of Baton Rouge no longer "maintains a system of street paving" which exempts property therein from one-half of the general parochial taxes. Under the Plan of Government, the City of Baton Rouge bears no part of the expense of maintaining its streets. The Parish of East Baton Rouge bears the entire burden thereof. There is no basis for the claimed exemption from one-half the levy for general parochial purposes on property located wholly within the corporate limits.

Plaintiff's sixth contention is that the extension of the corporate limits of the City of Baton Rouge effected by Sections 1.03 and 1.08(a) of the Plan of Government is invalid for the reasons: (1) that there was no compliance with the provisions of Act No. 315 of 1946, setting forth the procedure for the enlargement of municipal limits; and (2) that if Article 14, Section 3(a) of

the State Constitution is held to authorize the extension of such city limits in the Plan of Government, then both are unconstitutional as being violative of the due process of law clause of Article 1, Section 2 of the Constitution of Louisiana, and of the equal protection and due process of law clauses of the Fourteenth Amendment to the constitution of the United States.

The first argument can be easily disposed of and set aside. Subdivision 2 of Article 14, Section 3(a) of the Constitution of Louisiana expressly provides that such plan of government may provide among other things for the extension of municipal limits. There was, therefore, no need to comply with the provisions of Act No. 315 of 1946, as the extension of the corporate limits of the City of Baton Rouge could be made in the Plan of Government itself, and could be made effectual on the date when adopted by the majority of the electors of East Baton Rouge Parish voting at the election to accept the Plan of Government.

Constitutional provisions are subject to the same rule of interpretation and construction as are applicable to other laws. Nicholson v. Thompson, 5 Rob. 367; Landry v. Klopman, 13 La.Ann. 345; Orleans Parish School Board v. Murphy, 156 La. 925, 101 So. 268; 11 American Jurisprudence 658, Constitutional Law, Section 49; 16 C.J.S. Constitutional Law, § 15, page 51.

Plaintiff finally argues that even if Article 14, Section 3(a) of the Constitution did authorize the extension of the city limits by the Plan of Government, this extension, without the consent and approval of the voters and taxpayers of the territory thus annexed, deprives them of their property without due process of law and denies them equal protection of the laws, in violation of the Fourteenth Amendment to the Federal Constitution.

It is well settled that municipalities are creatures of the State, established purely for convenience in providing effective government at local levels, with functions, powers, duties and obligations delegated or imposed by the State, and that there is nothing in the Fourteenth Amendment and in other provisions of the Federal Constitution prohibiting the State from making any change in such functions, powers, duties and obligations. The State is supreme in this sphere of action. Municipalities are creatures of the Legislature, entirely subject to the legislative will. State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826 and cases therein cited.

The general rule, as stated in 37 American Jurisprudence 639, Municipal Corporations, Section 23, is:

"In the absence of constitutional limitations, it is generally considered that the power of a state legislature over the boundaries of the municipalities of the state is absolute and that the legislature has power to extend the boundaries of a municipal corporation, or to authorize an extension of its boundaries without the consent of

the inhabitants of the territory annexed, or the municipality to which it is annexed, or even against their express protest. * * *"

In a specific consideration of the constitutional aspects of the matter, it is said, 37 American Jurisprudence 646-647, Municipal Corporations, Section 29:

"A statute annexing, or authorizing the annexation of territory to a municipal corporation has been held not to deprive the people in the territory affected of any constitutional right of local self-government. Nor does it in any way violate the rights of the individual residents of the affected territory either as citizens or as taxpayers. There is no contract between the citizens and taxpayers of a municipal corporation and the corporation itself that the citizens and taxpayers shall be taxed only for the uses of that corporation, and shall not be taxed for the uses of any like corporation with which it may be consolidated. It is held by the great weight of authority that the courts cannot interfere with the annexation of territory to a municipal corporation even if the effect is to subject the annexed territory to taxation for municipal purposes from which it derives no benefit. A statute providing for the annexation of territory to an existing municipality is not objectionable because it may result in the taxation of property within the annexed territory to pay a pre-existing indebtedness of the municipality to which it has been added. * * * *Neither is*

*it unconstitutional as depriving the people of the annexed territory of their property without due process of law through the imposition of taxes or additional taxes, as where, by the method of voting prescribed by the annexing statute, the voters of the lesser municipality are overpowered by the voters of the larger and the annexation compelled without their consent and against their protest."* (Italics ours.)

In discussing the necessity for the consent of the electors or taxpayers of the annexed areas to the annexation, 37 American Jurisprudence 648, Municipal Corporations, Section 30 states the law on the subject as follows:

" * * * Inasmuch as the legislature may provide for the annexation of territory to municipal corporations without the consent of the inhabitants of the annexed territory, the inhabitants cannot complain of any limitation upon their ability to express their disapproval if the legislature sees fit to make the statute conditional upon its acceptance by the affected territory. Thus, if the annexation of a small municipal corporation to a large one is made conditional upon its acceptance by a majority of the voters of the two municipal corporations taken together, the citizens of the smaller one cannot complain, although their vote is overpowered by that of the larger one; nor is it any ground for objection that the right to vote upon the acceptance of the act is limited to the taxpaying electors of the territory which

it is sought to annex, or, still less, that it is left to those possessing the suffrage at general elections, so that owners of taxable property in the annexed district having no right to vote, such as nonresidents and corporations, have no voice in the matter."

 It is easier to find fault with a Plan of Government proposed than to propose a Plan of Government that is faultless, and by following the presumption of law and of fact which must be indulged in favor of the legality of Article 14, Section 3(a) of the Louisiana Constitution, the conclusion is inescapable that the judgment of the district court should be affirmed.

For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.

FOURNET, J., concurs in the decree.

McCALEB, Judge (concurring).

I agree that the challenge on Act No. 389 of 1946, which amended Article XIV of the Constitution by adding thereto a new section designated as Section 3(a), is not well founded. Since the Act has become part of the organic law by vote of the people, the attack thereon is restricted to a determination of whether it has been legally adopted—for, if it was, any general clauses or other provisions of the Constitution with which it might conflict must

yield as it is a special ordinance having reference solely to a plan of government for a particular parish.

The claim of invalidity relative to the adoption of the amendment is that it is violative of that portion of Article XXI, Section 1 of the Constitution, which provides that "When more than one amendment shall be submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately."

This claim is not tenable. Unlike Graham v. Jones, 198 La. 507, 3 So.2d 761, where an attempt was made in one amendment to repeal twenty sections of the Constitution, amend and rewrite eight and add seventeen new ones, Act No. 389 of 1946 has but a single purpose and object—a plan for the government of a particular subdivision of the State. Indeed, the attack herein is on a parity with that in Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752, which, in my opinion, controls the decision in this case.

The other assaults, i. e., that the amendment violates the equal protection and due process clauses of the Federal Constitution, cannot be considered in a suit brought by the State. These constitutional guarantees are for the protection of the person and property of the individual who alone may demand fulfillment upon invasion.

I concur in the decree.