**AKRON BOARD OF EDUCATION et al.,**
**Plaintiffs,**

v.

**STATE BOARD OF EDUCATION OF**
**OHIO et al., Defendants.**

**No. C 72-809.**

United States District Court,
N. D. Ohio, E. D.

Sept. 1, 1972.

John M. Glenn, Edward Erickson, Akron, Ohio, for plaintiffs.

John F. Ray, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

The defendants have moved to dismiss this action on the ground that neither plaintiff has standing to bring this cause pursuant to 42 U.S.C. § 1983 or the Fourteenth Amendment to the United States Constitution. Plaintiffs, the Akron Board of Education and the Superintendent of Schools of Akron, allege that this action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and

invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1343.

Plaintiff Akron Board of Education is a body corporate and politic organized to operate free schools with the Akron City School District and is empowered by state statute to bring suit in its own name for the purpose of enforcing its rights and responsibilities under the law. The plaintiffs wish to restrain and enjoin the transfer of the Sachett Hills area for the Akron City School District to the adjacent Summit County Boston-North Hampton School District purportedly pursuant to Section 3311.24 of the Ohio Revised Code, because such a transfer would affect the racial composition of the Akron schools and on other grounds.

In order to evaluate whether the plaintiffs in this case possess the requisite standing, an analysis of the law of standing and the language of 42 U.S.C. § 1983 and 28 U.S.C. § 1343 is required. It is generally agreed that the role of the judiciary is the protection of interests specifically affected by an allegedly illegal official action. As Professor Jaffe has described it:

". . . when the plaintiff is not able to satisfy the requirement of special interest, when he brings his action as a representative of the general public, the propriety of judicial intervention is sharply questioned. It is not that private interests and the public interests are mutually exclusive elements of the common weal. The protection of private rights is an essential constituent of the public interest and conversely, without a well-ordered state there could be no enforcement of private rights. Private and public interests are both in a substantive and in a procedural sense aspects of the totality of the legal order. (Footnote omitted) But this truth offers little help in determining the proper role of judicial control of public officers. It may still be argued that judicial control is more necessary, more apt, or more feasible in controversies which specifically affect the interests of the litigants, and that in the absence of special injury the judiciary should not intervene." (Jaffe, Judicial Control of Administrative Action, 459.)

The question of standing in the federal courts is considered within the framework of "cases" and "controversies." See Coleman v. Miller, 307 U.S. 433, 464, 59 S.Ct. 972, 83 L.Ed. 1385 (concurring opinion). Apart from the jurisdictional requirement, the Supreme Court has developed a series of rules of self-restraint for its own governance which include:

"The Court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation (citation and footnote omitted.) Among the many applications of this rule, none is more striking than the denial of the right of challenge to one who lacks a personal or property right. Thus, the challenge by a public official interested only in the performance of his official duty will not be entertained. Columbus & Greenville Ry. Co. v. Miller, 283 U.S. 96, 99, 100 [, 51 S.Ct. 392, 75 L.Ed. 861]." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347–348, 56 S.Ct. 466, 483, 80 L.Ed.2d 688 (concurring opinion by Brandeis, J.).

These rules of self-restraint will be examined concurrently with a discussion of the constitutional requirements.

"In terms of Article III limitations on federal court jurisdiction, the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). When reviewing questions of standing, two criteria must be met. First, it must be established that the plaintiff has suffered injury in fact, economic or other-

wise. Additionally, the interest which plaintiff seeks to protect must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc., et al. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L. Ed.2d 184 (1969).

The Akron School Board and the Superintendent of the Akron Schools contend that they have been injured because the transfer of these students out of the Akron District will affect the racial composition of the students in their schools and the school tax base for the Akron School District. Since this is a motion to dismiss, the plaintiffs' allegation of discrimination must be accepted as fact. The question is whether the Akron Board of Education is legally capable of being injured by this discrimination. Without doubt there are some who are directly affected by this transfer, assuming that the plaintiffs' allegations are true. These are the taxpayers of Akron, who might well have to pay more in school taxes, and the students of Akron, whose school's racial composition will be altered. However, the injury to the Akron Board of Education is not as clear cut. Analogous situations do not support their claim. Municipal corporations have regularly been denied standing in the federal courts to attack state legislation as violative of the Federal Constitution. *E. g.*, *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 250 U.S. 394, 39 S.Ct. 526, 63 L.Ed. 1054 (1919); *City of Trenton v. New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933). While administrative or executive officers have standing to defend the constitutionality of legislation which he is charged with administering or enforcing, *e. g.*, *Boynton v. Hutchinson Gas Co.*, 291 U.S. 656, 54 S.Ct. 457, 78 L.Ed. 1048 (1934), a state official did not have the requisite interest necessary to vindicate the Federal Constitution so as to give him standing to attack the validity of a state statute which he was charged with enforcing. *Smith v. Indiana*, 191 U.S. 138, 24 S.Ct. 51, 48 L.Ed. 125 (1903); *Columbus & Greenville Ry. v. Miller*, 283 U.S. 96, 51 S.Ct. 392, 75 L.Ed. 861 (1931).

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923) deserves thoughtful review. This case challenged the constitutionality of the Maternity Act, which provided for appropriations to participating states for the purpose of reducing maternal and infant mortality and to protect the health of mothers and infants. It was asserted that these appropriations were local and not national, and that it constituted an effective means of inducing the states to yield a portion of their sovereignty in violation of the Tenth Amendment to the United States Constitution. The Supreme Court acknowledged that they had no power per se to review and annul acts of Congress on the ground that they are unconstitutional and rejected the claim of the Commonwealth of Massachusetts that it could sue on behalf of the rights of its citizens which, allegedly, were invaded and usurped by the Maternity Act. While the Court did not say that the State may never intervene to protect its citizens against any form of enforcement of unconstitutional acts of Congress, this case was not one in which they could sue *parens patriae*.[1] The Ak-

---

[1]. It should be noted that the vitality of *Massachusetts v. Mellon*, *supra*, was not affected by *Flast v. Cohen*, *supra*. *Flast* dealt with a suit by a taxpayer to attack a federal statute on the ground that it violated the Establishment and Free Exercise Clauses of the First Amendment rather than whether a taxpayer may challenge the constitutionality of the administration of a regulatory statute. Mr. *Flast*, unlike Mrs. Frothingham in the companion case to *Massachusetts v. Mellon* established a logical link between his status and the type of legislative enact-

ron Board of Education, as Massachusetts, contends that it may institute this suit even though it has not suffered any direct injury in fact, economic or otherwise. See Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The plaintiffs here apparently feel, as did the Sierra Club, that individualized injury need not be pleaded since they are bringing a "public action." While the Supreme Court has broadened the number of injuries upon which plaintiffs may seek relief, they have not abandoned the requirement that the plaintiff must himself have suffered an injury.

The plaintiffs rely principally upon a recent decision in the United States District Court for the Southern District of Ohio to support the proposition that they have standing to sue. Cincinnati Board of Education et al. v. State Board of Education (Civil Action 7673, S.D. Ohio, W.D., June 21, 1972) dealt with this precise issue. The District Judge overruled motion to dismiss in an action filed by the Cincinnati Board of Education to prevent a transfer of homes from its jurisdiction to the Forest Hills School District. In his opinion, he adopted and incorporated the finding of the United States Magistrate, to whom the matter was automatically referred and added several paragraphs in addition.

He stated that while there was a general rule that a party cannot challenge a state action unless he is within the group whose rights have been infringed, Barrows v. Jackson, 346 U.S. 249, 73 S. Ct. 1031, 97 L.Ed. 1586 (1953), there were exceptions to this proposition.

One of these exceptions was drawn in Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 471, 69 L.Ed. 1070 (1924), where the Supreme Court allowed two private schools to maintain an action to enjoin the enforcement of an initiative measure requiring parents and guardians to send their children to public schools on the ground that it violated the Society's and Hill Military Academy's constitutional rights to receive just compensation for the destruction of each one's corporation business. Both the Society of Sisters and the Military Academy were corporations who had been characterized as persons within the context of the Fourteenth Amendment and were attempting to prevent the loss of their property without due process of law. This direct economic injury cannot be properly claimed by the Akron Board of Education and, therefore, reliance on this case is misplaced. The fact that the result of this suit permitted parents and guardians to send their children to schools of their choice cannot mask the fact that these schools themselves had standing to sue to protect its property rights.[2]

Regardless of the holding of Pierce, the eminent District Judge relied on Bartels v. Iowa (and two other cases), 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047 (1923) as support for the proposition that private *parens patriae* were permitted to raise the rights of their students to learn the German language in their suit to enjoin the enforcement of a statute which penalized the teaching of a foreign language to young children in schools. With all due respect, there is no indication in the opinion of the Su-

---

ment attacked and established a nexus between his status as a taxpayer and the fact that the challenged law "exceeds the specific limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Article I, § 8.

2. Since these cases do not establish a right of private *parens patriae*, the notion of a public *parens patriae*, if such a thing may be applied to this situation, cannot be reached from this premise. The question of whether Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) itself establishes a right of public *parens patriae* is discussed later in this opinion.

# 390

preme Court or the published arguments that the injunction sought by the Lutheran Synold was brought as a private *parens patriae*. Rather, it seems that the three cases decided together, along with Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1922), decided the same day, dealt with the rights of teachers to teach languages other than English since they were threatened with criminal prosecution for violation of these laws. The inability to teach German in Lutheran schools may well have been viewed as an infringement on a First Amendment right. However, the opinion by Mr. Justice McReynolds is all too brief and does not make this clear. Mr. Justice Holmes, in his short dissent, frames the issue presented as whether teachers were deprived of liberty secured under the Fourteenth Amendment by this statute. Therefore, it would seem that the Lutheran Synod was suing for its teachers and for its own right to offer the teaching of German and not the right of their students to learn German. There is no denying the fact that allowing teachers to teach German means *a fortiori*; that students would be afforded the opportunity to learn German. However, this result does not indicate that reasons for the suit were an attempt to preserve the rights of the students.

A third case was relied on by the District Judge and is relied on by plaintiffs here. Brewer v. Hoxie School District, 238 F.2d 91 (8th Cir. 1956) was an action by a consolidated school district, its directors and superintendent for a declaratory judgment and an injunction against further interference by the "White Citizens' Council" with the operation of their schools on a desegregated basis. This action marked an attempt to enjoin those who wished to interfere with the school board's compliance with Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The school board brought this suit under the Supremacy Clause, Article 6, Cl. 2;

18 U.S.C. §§ 241 and 242; 42 U.S.C. §§ 1983, 1985(2) and 1988; and the Fourteenth Amendment. Jurisdiction was alleged pursuant to 28 U.S.C. §§ 1331 and 1343. This case, while superficially similar to the case at bar, is quite different. The members of the Hoxie School Board were threatened or intimidated by certain of the defendants. Certain of the defendants interfered with the operation of the Hoxie schools by acts of trespass, boycott, and picketing. In the case at bar, the plaintiffs claim only that the racial balance of their schools will be altered. However, there is language at the conclusion of this opinion which supports the position espoused by the Akron Board of Education.

Judge Woodrough affirmed the decision of the District Court that the:

"[I]dentity of interest between the school board and the school children is sufficiently close so as to permit the school board to assert the rights of school children under the Fourteenth Amendment in a federal equitable proceeding to restrain the illegal conduct." 238 F.2d at 104.

The opinion continued that since the school board had the duty to afford the children the equal protection of the law, it had the "correlative right . . . to protection in performance of its function." (238 F.2d at 104.) The Court felt that the rights of the school board and the rights of the children were "intimately identified" so that the personal rights of individuals to the equal protection of the laws could be asserted by a party in whose favor the right directly exists. *Cf.* Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917); Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1941); See generally, Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599 (1962).

 While this dicta standing alone seems to establish, or argue for the recognition of, the right of a school

board to sue on behalf of its students in an effort to comply with decisions of the Supreme Court, it does not so stand. The members of the school board were personally intimidated by certain of the defendants and the members of the school board were impeded in their attempt to dismantle their segregated school system. The obligations of the school board to attempt to integrate and operate their schools and the rights of the students to go to school free from threats, boycotts, and pickets by the White Citizens' Council and their supporters tracked exactly. The students were being harassed in attempting to attend their school, and the board was being harassed in their attempt to integrate and operate these schools. The Akron School Board can allege no personal injury and no infringement on their duty to "operate" the free schools of Akron which would permit them to attempt to exercise their "correlative right" to sue on behalf of their students. Both the Board and the children must suffer injury in fact before the rule of practice which requires the naming of children plaintiffs may be waived. Therefore, this case also cannot be said to dispose of this troublesome issue.

It is argued that Brown v. Board of Education, *supra,* and Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) establish the sufficient nexus to afford the plaintiffs standing to sue. While there is no contention that declaratory and injunctive relief may not lie to prevent an alteration in the attendance district if such an alteration constitutes an intentional discrimination in violation of the Equal Protection Clause, Deal v. Cincinnati Board of Education, 419 F.2d 1387 (6th Cir. 1969), the question as to who may seek such relief has never been ruled on by the United States Supreme Court.

It has been clear since *Brown* II that: "School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constituted good faith implementation of the governing constitutional principles. . . . At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis." Brown v. Board of Education, 349 U.S. 294, 299-300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955).

The Supreme Court has regularly reaffirmed this constitutional obligation which it placed upon school boards. Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); Swann v. Charlotte-Mecklenburg Board of Education, *supra.* It would seem at first blush that this opinion operates to interfere with the Supreme Court's order and with what is assumed to be a good faith attempt by the plaintiffs to comply with the spirit of the high court's mandate. This is not the case. The Board of Education is free to pursue appropriate state judicial action with an ultimate appeal from the Supreme Court of Ohio to the United States Supreme Court, so it is clear that they are not without a forum. However, this ignores rather than solves the problem. The mere fact that a burden has been placed on bodies corporate and politic does not grant them, *a fortiori,* standing to use. Standing to sue emanates either from a statutory provision such as Section 10 of the Administrative Procedure Act, Article III, or the court-imposed limitations of standing.[3] *Swann* and *Brown* have not altered or amended either the Article III or the court-imposed limitations on

---

3. This distinction is often blurred in that standing, like justiciability of which it is an aspect, is surrounded by the "same complexities and vagaries that inhere in justiciability." Flast v. Cohen, *supra,* at 98, 88 S.Ct., at 1952.

standing. Unless the Akron School Board can indicate some injury to itself as a body corporate or to its members, its suit must be dismissed. There are only limits as to what a school board can do. Its remedies are limited. While it can bus its students across the length and breadth of the district, only the courts can re-draw school boundary lines so as to correct the imbalance caused by segregated housing patterns or the arbitrary drawing of those lines by the State Board of Education. The courts can do this only when the facts dictate it and when the parties bringing the case are real parties in interest. The real parties of interest in the establishment and preservation of racial balance in the Akron schools are the students of Akron.

While the Akron Board of Education is to be congratulated for its acceptance of its constitutional burden, it may not attempt to vindicate or preserve what are essentially the rights of the school children of Akron in this case.

 Before disposing of this motion, it is important to review the defendants' claim that the Akron Board of Education is not a person within the purview of 42 U.S.C. § 1983. This statute reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, *any citizen of the United States or other person* within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (Emphasis added)

Neither the Akron Board of Education nor the Superintendent of Schools, in his official capacity, is a citizen or other person within the meaning of this section in this context. The Superintendent of Schools, if he is a person within Section 1983, has not been, in his official capacity, deprived of any rights,

privileges, or immunities under color of state law. As has been indicated previously, he does not allege any such rights, privileges, or immunities, but rather he alleges the rights of *jus tertii*. Since the plaintiffs do not come within the purview of Section 1983, their contention that they may bring this action directly under the Fourteenth Amendment must be examined. 28 U.S.C. § 1343(3) reads:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any *person* . . . [t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the *Constitution of the United States* or by an Act of Congress providing for equal rights of *citizens* or of all *persons* within the jurisdiction of the United States." (Emphasis added.)

As this jurisdictional statute indicates, an action may be brought to redress the deprivation of any right, privilege or immunity secured by the Constitution, McGuire v. Amrein, 101 F.Supp. 414 (D.C.Md.1951); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970). Therefore, the plaintiffs need not make an allegation under Section 1983 in order to vindicate their equal protection claims. But in order for the plaintiffs to proceed under the Fourteenth Amendment and this jurisdictional statute, they must be *persons*. As was indicated above, they do not qualify as persons.

Since the Akron Board of Education and the Superintendent of the Akron Schools do not have standing to sue in this Court and are not persons within the jurisdictional statute, this Court has no alternative but to dismiss this cause for want of jurisdiction. If plaintiffs wish to enjoin this transfer, their only forum is the state court. This is indeed unfortunate since they could litigate their cause before a federal tribunal by

joining as parties plaintiff, the people who may be affected by the transfer order, the taxpayers and students of Akron.

This cause is dismissed for want of jurisdiction.

It is so ordered.