The Honorable Stan Clark State Senator, 40th District State Capitol, Room 449-N Topeka, Kansas 66612
Dear Senator Clark:
You inquire whether legislation that would place a two-year cap on franchise fees currently being paid to cities by natural gas or electric utilities would violate Article 1, Section 10 of the United States Constitution which prohibits states from "impairing the obligation of contracts." The legislation in question is motivated by your concern that high energy costs "are providing a windfall for cities" while creating financial problems for consumers.
K.S.A. 12-2001 et seq. establish the framework for a city to extend a franchise to a utility. Generally, a city contracts with a natural gas or electric utility to provide services to the city and its inhabitants.[1] A utility pays a fee to the city in the form of a fixed charge prescribed in the ordinance which may be a percentage of the gross receipts from the consumers.[2] The contract is codified in an ordinance which is subject to a referendum upon a successful protest.[3]
Article 1, Section 10 of the United States Constitution provides that "no State . . . shall pass any . . . Law impairing the Obligation of Contracts." The intent behind the Contract Clause was to prohibit states from retroactively interfering with contracts between private parties.[4] Contracts between a municipality and a third party are within the ambit of Article 1, Section 10.[5] However, a municipal corporation may not have standing to sue the State for violation of the Contract Clause on the ground that, being a creature of the Legislature, it is subject to the Legislature's will.[6]
In Home Bldg. L. Assn. v. Blaisdell,[7] the United States Supreme Court upheld a Minnesota law which gave state courts authority to extend a landowner's redemption period after a real estate mortgage foreclosure sale from eighteen months to three years. After years of invalidating state legislation on Contract Clause grounds, the Court recognized that the police power of the state to protect the interests of the community must be taken into account.[8] The Court listed five factors that are significant in balancing the right of parties to contract with the "reserved power of the state to protect the vital interests of the community:"[9]
1. Whether the legislation is an emergency measure.
 2. Whether the legislation is necessary to protect a basic societal interest, rather than helping particular individuals;
 3. Whether the legislation is tailored appropriately to its purpose;
 4. Whether the legislation imposes reasonable conditions and;
 5. Whether the legislation is limited to the duration of the emergency.[10]
The Court concluded that legislation meeting these elements stood a good chance of passing muster under the Contract Clause.
The case of Allied Structural Steel Co. v. Spannaus,[11] added a threshold question to the Blaisdell analysis by inquiring whether the legislation had, in fact, "operated as a substantial impairment of a contractual relationship:"[12]
 "The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. [Total] destruction of contractual expectations is not necessary for a finding of substantial impairment. [On] the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. [In] determining the extent of impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past."[13]
If there is no "substantial impairment," then there is no constitutional violation.[14] If the state regulation constitutes a substantial impairment, the state must establish a "significant and legitimate public purpose behind the regulation such as the remedying of a broad and general social or economic problem:"[15]
 "[Since] Blaisdell, the Court has indicated that the public purpose need not be addressed to an emergency or temporary situation. [One] legitimate state interest is the elimination of unforeseen windfall profits."[16]
In Energy Reserves Group, Inc. v. Kansas Power Light Co.,[17] theUnited States Supreme Court, affirming the decision of the Kansas SupremeCourt[18] upholding the Kansas Natural Gas Price Protection Act,concluded that the State of Kansas had a significant and legitimate stateinterest in protecting consumers from the escalation of natural gasprices caused by federal deregulation because of the hardship that highergas prices would cause to people on limited fixed incomes.
 If a legitimate public purpose is identified, the final inquiry iswhether "the adjustment of the rights and responsibilities of thecontracting parties is based upon reasonable conditions and is of acharacter appropriate to the public purpose justifying the legislation'sadoption."[19]
The Energy Reserves Group case addressed a challenge to the Kansas Natural Gas Price Protection Act,[20] which was designed to minimize the impact of gas price increases caused by federal deregulation by allowing only gradual gas price increases through the postponement of automatic price escalator clauses in intrastate gas purchase contracts.[21] The Kansas Supreme Court found that the legislation was "appropriately tailored" to achieve the State's goal of controlling "the serious economic dislocations that a sudden introduction of significantly higher energy costs would produce."[22]
Given that your question does not involve the constitutionality of specific legislation, we can only provide guidance concerning the standard applied to Contract Clause challenges. However, in light of the great deference paid by courts to legislative judgment,[23] it would appear that legislation designed to protect consumers from significant increases in natural gas prices would satisfy the "significant and legitimate state interest" prong of the Energy Reserves Group analysis. However, to withstand a Contract Clause challenge, the Legislature would have to craft legislation that is narrowly tailored to address this interest by adjusting the rights and responsibilities of the contracting parties through the imposition of reasonable conditions that are appropriate to the public purpose justifying the legislation.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 12-2001.
[2] Id.
[3] Id.
[4] Federal Land Bank of Wichita v. Bott, 240 Kan. 624, 629 (1987).
[5] Singer v. City of Topeka, 227 Kan. 356, 366 (1980).
[6] City of Pawhuska v. Pawhuska Oil Gas Co., 250 U.S. 394,63 L.Ed. 1054, 39 S.Ct. 526 (1919); City of Winfield v. Court of IndustrialRelations, 111 Kan. 580 (1922); Attorney General Opinion No. 90-74. Butsee City of Charleston v. Public Service Comm. of West Virginia,57 F.3d 385 (4th Cir., 1995).
[7] 290 U.S. 398, 78 L.Ed. 413, 54 S.Ct. 231 (1934).
[8] 240 Kan. at 632.
[9] Id. at 632.
[10] 290 U.S. at 444-447.
[11] 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).
[12] 438 U.S. at 244.
[13] Energy Reserves Group, Inc. v. Kansas Power Light Co.,459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).
[14] 240 Kan. at 634.
[15] 459 U.S. at 411.
[16] 459 U.S. at 412.
[17] Supra, at note 12.
[18] 230 Kan. 176 (1981).
[19] 459 U.S. at 412.
[20] K.S.A. 55-1401 et seq.
[21] See Attorney General Opinion No. 97-47.
[22] 230 Kan. at 188.
[23] 230 Kan. at 1151.